## Duffield, Appellant, *v.* Rosenzweig.

*Oil lease—Trespass—Measure of damages for sinking well.*

Where a lease of land for oil mining purposes, with the exclusive right of boring for oil thereon, restricts the operations to certain sites, and the lessor or his subsequent grantee drills wells on the leasehold outside of the sites designated, the lessee's measure of damages is the difference in value of the leasehold before and after the injury was committed: Duffield v. Rosenzweig, 144 Pa. 520.

*Drainage or suction theory.*

The damages cannot be estimated by the amount of oil which the new wells might drain from the old wells, the proof of damages upon this basis being impracticable, in the nature of the case.

Argued May 5, 1892.    Appeal, No. 419, Jan. T., 1892, by plaintiff, from judgment of C. P. Warren Co., Dec. T., 1889, No. 69, on verdict for plaintiff for less than full amount of claim.    Before PAXSON, C. J., STERRETT, GREEN, McCOL-LUM and MITCHELL, JJ.

Trespass for damages to oil lands, etc.

This case was originally tried in the court below, without a jury, under the Act of 1874, by MORRISON, P. J., of 48th judicial district, who held that, even if trespass would lie, plaintiff's rights should be determined in the equity suit pending between Duffield and Hue (136 Pa. 602), the latter being a lessee of the defendant here.    On appeal, the Supreme Court reversed the judgment (144 Pa. 520), and, holding that plaintiff would seem to be entitled to judgment for some amount, the record was "remitted for further proceedings."

The facts as found by the court on the original trial appear by the report in 144 Pa. 520.    Briefly stated for the purposes of this case they are as follows: Plaintiff was the owner of an oil lease, known as the Pratt lease, dated Jan. 20, 1882, to continue for fifteen years, covering some thirty acres of land, designating certain sites to which the operations for oil were to be restricted.    A mill-yard connected with a sawmill, near the centre of the tract, containing some two acres, was reserved from mining operations.    Plaintiff drilled wells on lands adjoining the mill-yard lot.    Defendant acquired the title of the lessor and then conveyed his interest in the mill-yard lot to Hue et al., for oil mining purposes, and the latter drilled three wells on the lot in the spring of 1886.    This action was brought Nov. 21, 1889.

After the record was remitted, the court heard additional testimony as to the amount of damages.

Plaintiff's counsel proposed to show by plaintiff how much oil had been taken out of the mill-yard, and how much, in his opinion, the continuing production from those wells on the mill-yard would take out during the balance of the term.    To be followed by proof of the amount of that production during

the entire term that would go to the plaintiff's wells, if the wells had not been put down by the defendant in the mill-yard, together with the value of the oil. Objected to; objection sustained; evidence excluded; exception and bill sealed. [8]

Counsel offered to ask plaintiff: "Q. Now, Mr. Duffield, can you state the amount of the production of your seven wells for the year ending in April, '86? The purpose is to show how much, by comparison, the production was for the following year after the defendant's wells were drilled, to show how much the production fell off as compared with the preceding year. This is for the purpose of showing the extent that the drilling of these wells affected the plaintiff's wells; thereby affording a means by which they can arrive at the damages caused to the plaintiff's property and his wells by the drilling of these three wells by the defendant." Objected to as incompetent and irrelevant.

The Court: Understanding this question to open an investigation into the drainage or suction theory of one well or wells upon others, and understanding that the Supreme Court has already ruled that that is not the proper way to fix the measure of damages—that it is not possible to fix a satisfactory measure in that way, we sustain the objection and exclude the testimony. Exception and bill sealed. [13]

Plaintiff was then asked: "Q. In the spring of '86, can you give us the amount of production of your wells? To show what they were producing, and also to show what defendant's wells were producing at the same time; to be followed by evidence to show how much of the oil that the defendant's wells produced was taken from plaintiff's wells." Objected to; objection sustained; exception and bill sealed. [14]

Plaintiff was afterwards called by way of cross-examination and examined, when plaintiff's counsel, on cross-examination, made this offer: "The witness having been called to state the average monthly production of his wells, for the first six months in 1886, from January to June; we propose now to ask the witness if there was any apparent difference in the production of his wells, after the defendant's wells were drilled, compared with the production before that time, during the year 1886." Objected to.

The Court: You can show what each month's production

was, to see whether it is correct. We will have to exclude
the question as put: we think it is entering into the drainage
or suction theory, which is not the correct rule of damages.
Exception and bill sealed. [15]

Plaintiff's counsel then offered to ask plaintiff: "Q. To
what can you attribute the difference between the average
daily production for the first six months of '86 and the last
six months of '85? The purpose is to show the cause of that
falling off was due to the drilling of these wells in the mill-
yard." Objected to as incompetent and not cross-examination.

The Court: That is the drainage or suction theory. We
don't think that would help us any in this investigation; we
will have to exclude it. Exception and bill sealed. [17]

Plaintiff's witnesses estimated the damages at about $4,500,
defendant's witnesses at about one quarter of that sum. Some
of the witnesses testified that the value of a leasehold was esti-
mated by the production and the market value of the oil; and
that depended upon the price of oil and stability of the market.
If a lease was entirely drilled and there were ten wells on it
and those wells were doing twenty barrels a day, one fourth
being royalty, the working interest would be fifteen barrels.
If the price of production was $350 a barrel, it would be worth
fifteen times $350. If the lease was not drilled entirely or had
no wells drilled, the value was estimated by the nearest pro-
duction and probability of its being producing territory. If
there are ten locations on it, it is worth so much a location,
depending on the size of the wells near by.

The court filed the following opinion:

### FINDINGS OF ADDITIONAL FACTS.

" 1. In the spring of 1886, the value of the plaintiff's lease-
hold, freed from the obstructions put upon it by the defend-
ant's lessees for the balance of the term, with its situation,
surroundings, production, royalty and the general condition of
the oil market and business, was $4,500.

" 2. The value of the same for the same term as affected by
the obstructions put upon it by the defendant's lessees was
$3,375.

" 3. Therefore the damages to the plaintiff's leasehold in the
spring of 1886 caused by the obstructions put upon it by the
defendant's lessees amounted to $1,125.

## CONCLUSIONS OF LAW.

" 2. Plaintiff's title is a leasehold and the proper measure of damages for which the defendant is liable is the difference in the value of the leasehold until the expiration of the term free from the obstructions which the defendant's lessees have put upon it, less the value as affected by the obstructions : Opinion of Supreme Court in this case filed Oct. 26, 1891.

" 3. The plaintiff is entitled to recover in addition to the damages of $1,140, which he sustained in the spring of 1886 as damages, a sum equivalent to the injuries sustained by unlawfully withholding until this date the sum which we have found he was damaged by the operations of the defendant's leases, and this sum is properly measured by the interest on $1,140, from the spring of 1886 until the present time : City v. Campbell, 107 Pa. 530.

" In support of the foregoing conclusions we desire to add that in fixing the value of the plaintiff's leasehold we adopted the theory of the defendant, which was strongly supported by his witnesses, to wit : that the value of a leasehold in the Clarendon field in the spring of 1886, like that of plaintiff's upon which he had no remaining locations for wells, and his lease was surrounded by producing wells and dry territory, and his wells had run down to a production of a barrel apiece per day, was so much per barrel for the daily production.    The evidence of the plaintiff and his witnesses as to the value of his leasehold estate was visionary, speculative and unsatisfactory. In fact the evidence of the plaintiff and one of his principal witnesses finally agreed with the defendant's theory that the usual method of fixing the market value of a producing leasehold upon which there were no other locations for drilling was to ascertain the daily production, and that this was worth from three hundred and fifty to six hundred dollars per barrel. Upon this theory, which was strongly supported by the evidence, we could not find the value of the plaintiff's leasehold in the condition it was, to be more than $4,500.

" But on the other hand we regard the evidence of the plaintiff and his witnesses, as having much more weight than those of the defendant on the question as to whether the wells on the mill-yard injured the market or salable value of the plaintiff's leasehold estate.    The positive testimony of the defendant's wit-

nesses that the sinking and operating of three oil wells on the mill-yard by the defendant's lessees in the spring of 1886, did not lessen the market value of the plaintiff's leasehold, is, to me, astonishing testimony. I have resided in the oil regions since the Drake well was drilled, and my observation and experience is such that, in my judgment, the evidence of two intelligent witnesses that the wells on the mill-yard did reduce the market value of the plaintiff's leasehold about one fourth, far outweighs the testimony of many witnesses to the contrary.

" I therefore reach the conclusion that plaintiff's leasehold was damaged equal to one fourth of its value by the operations of the defendant's lessees."

Plaintiff's points were as follows, *inter alia :*

"1. The plaintiff holding the demised premises under the Pratt lease, according to the terms of that grant, had a leasehold estate in the entire demised premises with exclusive rights therein, as against the lessors and their assigns, as well as against strangers, of mining for and carrying away oil, gas, or other mineral, mined or drawn from within and underneath the premises so demised ; and if the defendant against the will of the plaintiff put his lessees into possession of the mill-yard for the purpose of mining for and taking out oil or other mineral underneath the surface and within the boundaries of the premises so demised to plaintiff, he became liable therefor to the plaintiff in this action of trespass. *Answer:* We refuse to affirm this point, and thereby say that the defendant became liable to the plaintiff for the value of all the oil taken out of the wells on the mill-yard. But the defendant is liable in this action for the damages caused to the plaintiff's leasehold estate under the rule laid down by the Supreme Court in the opinion of Oct. 26, 1891. [1]

" 2. The plaintiff owning a leasehold estate in the oil, gas and other mineral, within and underneath the boundaries of his demise, and having drilled seven wells into the oil-bearing sand-rock and connected it by means of pipes with his tanks, had thereby such possession of his mineral estate as justifies this action of trespass against the defendant for causing his lessees in possession of the surface of the mill-yard to drill wells into the oil-bearing sand-rock. *Answer:* Without committing ourselves to all that this point contains, we so far affirm it as

to say the plaintiff may recover in this action such damages as are indicated in the answer to his first point. [2]

" 3. The plaintiff is entitled to recover in this case such a sum as is equivalent to the market value of the oil taken out of the demised premises of the plaintiff up to the time suit was brought, with interest on such sum, from the time the oil was taken, to this date. *Answer :* Refused. [3]

" 4. If the foregoing proposition is not affirmed, then the court is requested to find for the plaintiff as damages, the value of the oil which the evidence shows was diverted from the plaintiff's wells up to the time of suit brought by the drilling of the wells in the mill-yard and such other damages for diverting gas from plaintiff's wells. . . . *Answer :* Refused. [4]

" 5. If the court should not affirm either of the two foregoing propositions, then the court is requested to say that the plaintiff is entitled to recover the damage and injury suffered to his leasehold estate for the entire balance of the term by the drilling of the wells in the mill-yard ; and in estimating the amount it is proper to take into consideration the probable amount of oil drained or diverted from plaintiff's wells and the diversion of the gas by the mill-yard wells, and also the injury to the salable qualities of plaintiff's leasehold by the continuance of the three mill-yard wells thereon during his term. *Answer :* Refused. [5]

" 6. It having been found as a fact from the undisputed evidence that there has been, up to the time suit was brought, $8,000 worth of oil taken out by the defendant, and it being also in evidence by the various witnesses that from one third to three fourths of the oil taken out was diverted from the plaintiff's wells, if the plaintiff was entitled to recover, it then became the duty of the court, acting without a jury, either to have awarded the whole amount of oil as damages or to have determined from the various statements where the preponderance lay and to have assessed the damages accordingly. *Answer :* Refused." [6]

. Plaintiff excepted to the answers to the points, which exceptions the court overruled and entered final judgment as indicated above, whereupon plaintiff appealed.

*Errors assigned,* inter alia, were (1–6) overruling exceptions to answers to points, quoting points and answers, and (8, 13–15, 17), rulings on evidence, quoting bills of exception.

*Samuel T. Neill*, for appellant, on the measure of damages, relied chiefly upon Westmoreland Nat. Gas Co. v. De Witt, 130 Pa. 235; Allison's Ap., 77 Pa. 221; Gowan v. Christie, 5 Moak's H. of L. 114.

*Wm. E. Rice*, of *Hinckley & Rice*, and *L. Rosenzweig*, with them *Geo. A. Allen*, for appellees, cited: Duffield v. Hue, 129 Pa. 94; 136 Pa. 602; Duffield v. Rosenzweig, 144 Pa 520; Union Petroleum Co. v. Bliven Petroleum Co., 72 Pa. 173.

PER CURIAM, July 13, 1892.

While this case is by no means free from difficulty, the learned judge below appears to have closely followed our rulings, when the case was here upon a former appeal. See 144 Pa. 520. We see no sufficient reason to modify our views as then expressed by our late Brother CLARK.

Judgment affirmed.